## Tatem, Appellant, *v.* Galloway.

*Promissory note—Contract—Evidence.*

In an action by endorsers on a promissory note who had been compelled to pay it, against a former endorser, where the defense is a guarantee by the plaintiffs to cash two mortgages which they held for defendant and pay the note in suit and four other notes, a certificate for the defendant and judgment thereon will be set aside by the appellate court where the written evidence in the case not only does not establish the contract set up by the defendant, but is inconsistent with it, and there is no oral proof supplemental to or explanatory of the documentary evidence sufficient by itself, or in connection with the former, to sustain a finding that such a contract existed.

Argued Feb. 5, 1912. Appeal, No. 123, Jan. T., 1911, by plaintiff from certificate and judgment of C. P. Delaware Co., June T., 1910, No. 10, for defendant in case of Henry R. Tatem and Samuel B. Dobbs v. John L. Galloway. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Reversed.

Assumpsit by endorsers on a promissory note against a former endorser. Before JOHNSON, P. J.

Action in assumpsit on a promissory note by Henry R. Tatem and Samuel B. Dobbs, who were endorsers, against John L. Galloway, a prior endorser who was also the payee of the note. The documentary evidence referred to in the opinion of the Supreme Court was briefly as follows: A letter of July 27, 1908, from the defendant to the plaintiff Dobbs, in which the writer, after referring to his contract with one John Maddock for the millwork on certain houses at Collingswood, N. J., and to the difficulty he was having in securing payments from Maddock, states: "So if you have the two mortgages of $2,500 each fixed to secure the $5,000 I will take $1,000 cash now and his note for the balance due at present for three months and as each delivery is made you to provide the cash for half of the amount and I take his note for the other half. It being understood that you will provide the cash to pay notes as they fall due. In consideration of the above being carried out I agree to allow you 5 per cent. on the amount guaranteed. It is important that I get the payment and this other secured in order to have the work pushed as it will be a very short time until he will be ready for finish, and the mill insists on me securing myself in the future." A reply from Dobbs to defendant dated July 28, 1908, —"I have your letter of the 27,.....I see no reason why you cannot be absolutely guaranteed and this is the way we would do it. You accept Mr. Maddock's note for $5,000, together with two of the mortgages, as collateral security, and myself and H. R. Tatem will agree to cash these mortgages for you at maturity of note, which would be drawn for four months. We would probably be in position to advance you some money before hand, as we would expect to dispose of these mortgages right away. Now, if this is satisfactory, we would want you to accept above as full settlement, and proceed to ship all the material required at once, so as there will be no delay, and we will also want you to sign a release of liens for all ten houses, and rely absolutely on your guar-

antee." A reply by the defendant to Dobbs, bearing the same date,—"Yours of the above date handed me by Mr. John Maddock, I can only reply.....I do not want to be the cause of dragging the operation and waiting for every little item.....so it is useless to waste your time any more if my proposition could not be carried out, .....I am very sorry that we could not come to terms and rush it through,....." A contract dated August 10, 1908, between the defendant and Maddock as to the mortgages mentioned in this prior correspondence,— "Whereas, John Maddock is indebted to John L. Galloway.....and whereas, the said Maddock has agreed to give to the said Galloway certain promissory notes of the said Maddock aggregating the sum of $5,000, and has delivered as collateral security for the said notes two certain mortgages of $2,500 each.....and whereas, the said Galloway has agreed to proceed forthwith (with his work on the houses).....and to execute a release of liens thereon. And whereas, it has been agreed that the said notes and mortgages shall be held by said Samuel B. Dobbs for the parties interested therein, said notes being delivered from time to time to said Galloway, upon his furnishing the material in question, it being understood and intended that said mortgages are to secure the payment of said notes." A declaration, dated August 12, 1908, by the plaintiffs, as to the purposes for which they held the two mortgages in question, viz: "We hold two mortgages for $2,500 each.... to secure the payment of a certain note for $1,000 made by John Maddock to the order of John L. Galloway and endorsed by us, and after the payment of the said note the said mortgages or the proceeds thereof, are to be turned over to the said John L. Galloway, and that the said mortgages shall not be sold by us without the consent of the said John L. Galloway." A letter dated August 12, 1908, from Dobbs to the defendant concerning the above declaration and the disposition to be made of the mortgages, —"Enclosed find the declaration which was to be signed

by Henry R. Tatem and myself, showing that I hold the two mortgages for you, and that the mortgages or the proceeds thereof will be turned over to you after the note of $1,000 which we endorsed, is paid.  As we cannot dispose of these mortgages without your consent since signing this paper, it seems to me you better write us a letter, telling us to dispose of the mortgages for you, and also state the amount of commission you are willing to pay." A reply from the defendant to Dobbs, dated August 13, 1908, as follows: "You hold two mortgages of $2,500 each.....under direction of John Maddock to secure payments due by him to me for and on account of my contract with him for the supply of mill and stair work.  And you are hereby authorized to make sale of said mortgages at their full value, the proceeds thereof to be paid to me.  Provided that the cash shall be realized therefrom in time to meet certain notes given by the said John Maddock, or to be given, amounting to $5,000 as and when the same become due, and for your services in this behalf you will be allowed five per cent. of the face value thereof as previously agreed." A letter from the defendant to the plaintiffs dated November 30, 1908, —"In reference to your endorsement on a certain note .....(Describing note in suit) I hereby acknowledge that you nor either of you are not in any way obligated for any part of this debt, that the endorsements are purely as an accommodation, so I can get the note discounted at my bank, and that I understand that two mortgages which S. B. Dobbs holds for me are intended for the payment of this and other notes, which I have taken from John Maddock." A contract between the plaintiffs, as parties of the first part, and the various creditors of Maddock, including the defendant as the party of the sixth part, reciting,—"Whereas, Peter McGhehan is the owner in fee of all the following ten tracts of land (describing the building operation in question).....And whereas, the said Henry R. Tatem and Samuel B.

Dobbs hold or control mortgages of record upon each of the said ten lots of land in the sum of $2,500. And whereas, there has been advanced.....$1,600 upon each mortgage; and whereas, said mortgages are under process of foreclosure; and whereas, the said party of the second, third, fourth, fifth, sixth, seventh, eighth, ninth and tenth parts, respectively have,.....mechanics' liens upon the premises aforesaid, in the following amounts respectively: (Here follows a list of creditors with the amount due to each, including the defendant for $5,694.00). And whereas, it is considered that certain additional work remains yet to be done in order to complete the said houses.....the approximate cost of which will be as follows: (Here follows an itemized statement totalling $5,261). Now this agreement witnesseth.....

1. That the parties of the first part shall cause the said houses to be completed subject to the approval and supervision of a committee of the parties interested, to consist of John L. Galloway (the defendant), Francis B. Weaver and J. Fithian Tatem, and shall present a complete release of liens from all persons who shall furnish labor or material for the purposes of such completion. 2. The parties of the first part shall proceed with the foreclosure of their mortgages for the purpose of making clear and complete title to said premises, and upon sale under said foreclosure the title shall be taken in the name of Joseph L. Thomas, who will hold the same for the purpose of this agreement.....3. Thereupon there shall be created a new bond and mortgage of twenty-five hundred dollars upon each of the lots..... There shall then be assigned and delivered to the said parties of the first part, such of said new bonds and mortgages.....as shall be necessary to pay to the parties of the first part the sum of sixteen thousand dollars, with interest.....; and also.....such sum of money as they shall have paid and expended, subject to the approval of the aforesaid committee, for the completion of said houses under the terms of this agreement, with in-

terest.....; and also..... the sum which they may have incurred in the matter of the foreclosure of their mortgages first above referred to, in accordance with the terms of this agreement. 4.....5. The balance of the proceeds of such of the aforesaid new mortgages as may remain, and of the said properties, shall be distributed pro rata among the said lien claimants (including the defendant), according to the amount of their claims as aforesaid, and upon an equal pro rata to the said parties of the first part for such sum as they have advanced towards the completion of said houses in excess of the sum of sixteen thousand dollars, and the amount paid by them under the terms of this agreement for the completion of said houses, the sum on which they are entitled to pro rata with said lien claimants being agreed to be the sum of twenty-three hundred and fifty-six dollars and thirty-seven cents. 6. Should there arise any surplus after the payments herein above provided, in this event interest at the rate of five per cent. per annum shall be paid out of such surplus to the said lien claimants therein mentioned, such interest to be computed from the date of said claims; and provided further, that should there arise any surplus after the payment of the aforesaid sums, that then in this event such surplus shall be distributed by the said Joseph L. Thomas, trustee, and the said committee herein above named, to wit, John L. Galloway, Francis D. Weaver and J. Fithian Tatem....."

*Errors assigned,* among others, refusal of judgment n. o. v. in favor of the plaintiff.

*Ellwood J. Turner,* with him *Thomas O. Haydock, Jr.* and *J. Fithian Tatem,* for appellant.

*W. Roger Fronefield,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, March 18, 1912:

In 1908 the plaintiffs sold land to one Maddock and agreed to advance money for the erection of ten houses thereon, to be secured by a first mortgage on each house and lot. The buildings were commenced, and the defendant, Galloway, agreed to furnish the mill-work for the sum of $5,694; he supplied it to the value of about $2,000, but declined to deliver more until that sum was paid and the balance secured. An arrangement was then entered into whereby Maddock signed promissory notes to the order of the defendant, in the sum of $5,000, and handed them to the plaintiffs; he also delivered to the latter mortgages for $2,500 each on two of the houses. The plaintiffs accepted the mortgages and the notes and took Maddock's receipt for $5,000 on account of the $25,000 which they had agreed to advance; one of these notes was endorsed by the defendant and then by the plaintiffs, and the latter delivered it to the defendant, who again endorsed and had it discounted; this is the note in suit for $1,000. The mill-work was completely delivered, and the plaintiffs handed over certain other of the notes to the defendant, retaining the balance. Maddock failed, and the defendant, with other creditors, liened the houses. The notes were not paid at maturity and the plaintiffs were obliged to take up the present one at the suit of a subsequent endorser, and in turn they brought this action against the defendant as a prior endorser. The defendant demanded a certificate against the plaintiffs for $4,000 and interest, a balance claimed to be due him, alleging that in order to facilitate him in getting his money and thus aid the operation, the plaintiffs had agreed to deliver the notes to him as the mill-work was shipped, and had contracted to sell the two mortgages for $2,500 each and pay the notes as they came due; and "by reason of the violation of their agreement to cash the two mortgages and to pay the notes the plaintiffs made themselves liable to the de-

fendant for the payment of the full amount due on said
notes." The jury found for the defendant with a cer-
tificate for $4,488, and the plaintiffs have appealed.
There are several assignments of error but it is only nec-
essary to discuss the sixth, which complains of the re-
fusal of judgment non obstante veredicto in favor of
the plaintiff.

The principal contention of the defendant was that
the plaintiffs had entered into a definite binding con-
tract with him to sell or cash the two mortgages and
to pay the notes at maturity. While the plaintiffs con-
tended that the mortgages were simply collateral for
the notes, upon which they had become endorsers for
the accommodation of the defendant upon his express
written agreement that they should not be held liable
in any manner, and that they had never contracted to
cash the mortgages or pay the notes. The plaintiffs
showed that they were prima facie holders for value,
since they had been forced as endorsers to pay and take
up the note. The defendant undertook to rid himself
of his apparent liability as a prior endorser, by estab-
lishing the plaintiffs' contractual obligation to relieve
him from the payment of all the notes as they should
fall due, and to provide for and take care of the same.

The proofs relied upon consisted of documentary and
oral evidence. A review of the former, the material
parts of which will be found fully briefed in the re-
porter's notes preceding this opinion, fails to support
the position taken by the defendant. On the contrary,
standing alone, this evidence shows that the original
proposition made by the defendant to the plaintiffs was
not accepted, and that the counter proposition from the
latter to the former was declined. After this, the con-
tract between Maddock and Galloway, the declaration
by the plaintiffs as to the capacity in which they held
the mortgages and the accompanying letter from Dobbs,
all tend to support the contention of the plaintiffs to
the effect that the mortgages were simply collateral for

the notes, and that the references to their sale which occur in several of the documents, merely had relation to a suggestion made by the defendant that the plaintiffs should act as his agents in disposing of the securities for his account. Again, the letter of November 30, 1908, from the defendant to the plaintiffs expressly acknowledges that the latter were accommodation endorsers without any liability to him, and plainly indicates that the mortgages were held by Dobbs for the defendant as collateral to secure payment of the notes. And finally, the agreement entered into by the defendant, as a member of the creditors' committee, with the plaintiffs, whereby the mortgages in question were put in the general fund for the benefit of all of Maddock's creditors, including the defendant, is inconsistent with the position taken by him in this action; and in this connection, it is to be noted that the $5,000 receipted for by Maddock, covering the two mortgages originally set aside for the defendant, was not included by the plaintiffs in the $16,-000 advances referred to in the agreement in question.

We have looked in vain for oral testimony supplemental to or explanatory of the documentary evidence, sufficient by itself or in connection with the former, to sustain a finding of such a contract or undertaking as contended for by the defendant. Throughout his testimony the defendant seems to assume that there was such a contract, but he nowhere states positively that the plaintiffs ever undertook to cash the mortgages and pay the notes, nor does he detail any conversation between himself and the plaintiffs from which such a conclusion could be drawn. In fact, when the plaintiffs produced witnesses in rebuttal and the trial judge asked what particular testimony was to be rebutted, counsel was unable to designate it; and this because there had been no real evidence of the agreement contended for by the defendant. But the witnesses for the other side said plainly and positively that the plaintiffs held the mortgages simply as collateral for the benefit of the defend-

ant, that there had never been any understanding to the contrary, and that the mortgages had been repeatedly tendered to the defendant but he had declined to accept them because the properties were not completed.    The defendant himself, when upon the stand, stated, "They went ahead and finished eight houses leaving my two out.    That is why I would not accept the mortgages," and again, "I wanted my two first mortgages which I am willing to take today."

The evidence was insufficient to support the verdict and certificate in favor of the defendant; on the contrary, thereunder the plaintiffs were entitled to binding instructions; the sixth assignment of error is sustained and judgment is here entered for the latter; the damages to be assessed in the court below.